Leonard LEVITT, Plaintiff,

v.

Haskell MONROE, Individually and as Representative of the University of Texas at El Paso; Arthur Harris; and Wayne Fuller, Defendants.

No. EP–83–CA–86.

United States District Court,
W.D. Texas,
El Paso Division.

July 17, 1984.

H. Tom Peterson, El Paso, Tex., for plaintiff.

Michael H. Patterson, Asst. Atty. Gen., State and County Div., San Antonio, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

HUDSPETH, District Judge.

This is a suit for damages and other relief pursuant to 42 U.S.C. § 1983. The Plaintiff was a tenured Professor of Chemistry at the University of Texas at El Paso from 1966 until December 1982, when the Board of Regents of the University of Texas System terminated his employment. In his complaint, the Plaintiff contends that he was denied procedural due process in

connection with his termination in the following respects:

(1) That he was not given timely and adequate notice of the cause for his termination;

(2) That he was denied the right to confront the witnesses against him;

(3) That he was denied the opportunity to be heard;

(4) That he was not given a statement of the reasons for termination found by the special tribunal appointed by the President of the University to hear evidence in connection with the charges, and

(5) That two members of the tribunal (Defendants Fuller and Harris) were prejudiced against him, denying him the right to a hearing before an impartial tribunal.

The Court previously entered partial summary judgment in favor of the Defendants in connection with four of the Plaintiff's five claims. Since it was impossible to rule upon the Plaintiff's fifth claim without a trial on the merits, such a trial was held on July 2, 1984. The Court's findings of fact and conclusions of law are incorporated in this opinion.

The story began in February 1982, when a nursing student named Linda Scott who was enrolled in one of the Plaintiff's chemistry classes complained that he had made offensive sexual advances toward her. The Vice President for Academic Affairs, Dr. Olander, received the complaint from Ms. Scott, and, after consultation with the University President (Defendant Haskell Monroe), decided to offer Dr. Levitt the opportunity to resign. The Plaintiff refused the offer. On May 21, 1982, Dr. Monroe gave the Plaintiff formal written notice that proceedings would be instituted to terminate his employment (Plaintiff's Exhibit 3).

The procedure for terminating the employment of a tenured faculty member at any institution in the University of Texas System is established by Section 6.3 of the Rules and Regulations of the Board of Regents of the University of Texas System (Defendants' Exhibit C). These rules provide that employment may be terminated only for good cause shown. If the faculty member opposes the termination action, the rules require that he be informed in writing of the charges against him, and that on reasonable notice, the charges be heard by a special hearing tribunal appointed by the President of the University, and whose members possess academic rank at least equal to that of the accused faculty member (Regents' Rule 6.33). In compliance with these rules, Dr. Monroe, on May 21, 1982, appointed a five-member tribunal consisting of the following full professors: Dr. Judith Goggin, Professor of Psychology; Dr. J.L. Klingstedt, Professor of Education; Dr. Juan Lawson, Professor of Physics; Dr. Howard Neighbor, Professor of Political Science; and Dr. Stephen Riter, Professor of Electrical Engineering. Two other faculty members, Defendant Wayne Fuller, a history professor, and Dr. James Devine, a psychology professor, were appointed as alternates. Dr. Monroe's letter of May 21 also scheduled the hearing for June 14, 1982. From the very beginning, problems arose in getting the Plaintiff, the tribunal members, and the witnesses all together at the same place and the same time. The University administration asked for the first change in the hearing date (from June 14 to June 24, 1982) due to the unavailability of an essential witness. The Plaintiff was notified of this change by a letter dated June 7, 1982 (Defendants' Exhibit E). On June 16, 1982, the Plaintiff's attorney, H. Davidson Smith, III, informed Dr. Monroe that he was not available on June 24, and he asked for a continuance (Defendants' Exhibit F). The hearing was rescheduled for July 16, 1982. Because of the rescheduling, two of the original panel members (J.L. Klingstedt and Howard Neighbor) had to be excused, and they were replaced by the alternates, Fuller and Devine. Defendant Arthur Harris was then named as an alternate (Defendants' Exhibit G). On July 15, 1982, the Plaintiff's attorney notified Dr. Monroe that the Plaintiff had been admitted to the hospital, and was unavailable to attend a hearing on

July 16 (Defendants' Exhibit H). The hearing was rescheduled for August 25, 1982 (Defendants' Exhibit I). This new continuance caused Dr. Judith Goggin to become unavailable as a member of the hearing tribunal, and she was replaced by the alternate, Dr. Harris (Defendants' Exhibit L).

Between May 21, 1982, when the Plaintiff was first notified of the special tribunal hearing, and August 25, 1982, when the hearing actually commenced, an unexpected development occurred. The Plaintiff was interviewed by a reporter for the University's student newspaper, and he denied the allegations made against him by Linda Scott. When the story appeared in print, three other former students (Jane Jenkins, Delores Kurita, and Elaine Chavez) came forward to report that the Plaintiff had made offensive sexual advances toward them also. The Plaintiff was informed that these three young ladies were being added to the witness list, and that they would also testify at the hearing conducted by the special tribunal (Defendants' Exhibit I).

When the hearing began on August 25, the Plaintiff's attorney made a formal motion that Defendants Fuller and Harris recuse themselves from serving on the special hearing tribunal, asserting that each was biased and prejudiced against the Plaintiff. Both Fuller and Harris insisted that they were not biased, and the motion to recuse was denied. The tribunal proceeded to hear testimony on August 25 and 26 and September 9 and 16, 1982. On September 30, the tribunal announced its unanimous finding that good cause existed for the termination of Dr. Levitt's employment, and it recommended to the Board of Regents that he be terminated. In view of Dr. Levitt's years of service on the University faculty, however, the tribunal recommended that his employment be continued through the spring semester of 1983 (Defendants' Exhibit Q). The Board of Regents approved the tribunal's finding that good cause existed for termination, but declined to continue his employment through the spring semester of 1983. His employment was terminated on December 3, 1982 (Defendants' Exhibit R).

Dr. Arthur Harris, a professor of biological sciences, has been a member of the UTEP faculty since 1965. He became a member of the special hearing tribunal in this case through the process of attrition, and as the direct and proximate result of the continuances requested by the Plaintiff's attorney. Plaintiff's claim that Dr. Harris was prejudiced against him traces back to an incident that occurred in 1966 or 1967. At that time, the Plaintiff was serving as Chairman of the Membership Committee of the Graduate Faculty.[1] Dr. Harris presented his application for membership in the graduate faculty to Dr. Levitt as the Chairman of the Committee. The Committee did not approve Dr. Harris' application that year. The Plaintiff contends that this incident aroused Dr. Harris' hostility toward him, and that they had remained enemies throughout the intervening years. The Plaintiff supports his claim by evidence that in 1981, Dr. Harris recused himself from serving on a faculty committee appointed to review the Plaintiff's claim of entitlement to a merit pay raise on the ground that he did not consider himself an unbiased party with regard to that matter (Plaintiff's Exhibit 2).

Dr. Harris testified in the trial of this case that he declined to recuse himself from membership on the special hearing tribunal because he was not biased with respect to the charges of sexual misconduct brought against Dr. Levitt, and that he had no preconceived notion as to the truth or falsity of such charges. Furthermore, Dr. Harris specifically denied that he held any animosity toward the Plaintiff arising out of his failure to be selected as a member of the graduate faculty in 1966. On the contrary, Dr. Harris testified he was well aware that this decision was made by the entire graduate faculty, not by the Plaintiff alone. Furthermore, he was admitted to membership in the graduate fac-

---

1. The "graduate faculty" is a loose term meant to describe those members of the regular faculty who are certified as having the qualifications to teach graduate students.

ulty a year or two later, and was perfectly satisfied with that outcome. He explained his decision not to serve on the faculty committee investigating the matter of the Plaintiff's merit pay raise in 1981 by stating that he did not believe the Plaintiff was entitled to a merit pay raise for the following reasons:

 (1) He felt that professors in the Chemistry Department in general were overpaid in comparison with faculty members of equivalent rank in the Biology Department;

 (2) Dr. Levitt had lost or misplaced some of the attachments [2] to Dr. Harris' original application for admission to the graduate faculty, and this suggested to the witness that the Plaintiff was somewhat irresponsible;

 (3) Dr. Harris was in the building where Dr. Levitt's office was located on a daily basis, and he had observed that Dr. Levitt was rarely in his office;

 (4) He felt that Dr. Levitt's publications in scientific journals fell short of the standard that would be expected of a full professor of chemistry with many years' experience.

Dr. Wayne Fuller, a professor of history, has been a member of the faculty of the University of Texas at El Paso since 1955. Like Dr. Harris, he was originally an alternate, who became a full-fledged member of the special hearing tribunal through attrition. Plaintiff's claim that Dr. Fuller was prejudiced against him is based upon three allegations:

 (1) That Dr. Fuller served on a faculty committee some years before that in some fashion considered the question of the Plaintiff's competency;

 (2) That he also served as a member of a research award committee when the Plaintiff applied for such an award but did not receive it;

 (3) That he served as a member of the faculty committee that considered the issue of Plaintiff's merit pay raise in

1981, and made statements indicating that he believed the allegations of sexual misconduct with respect to the Plaintiff.

Dr. Fuller testified in the trial that he had no bias or prejudice with respect to the Plaintiff, and that he had not prejudged the charges which were heard by the special tribunal. With respect to the faculty committee upon which he served some twelve years before, he testified that the issue then with respect to the Plaintiff's competency had no relation to the present charges, and did not affect his attitude toward them. With respect to the research award, Dr. Fuller testified that Dr. Levitt was one of several applicants for the award, and that his failure to get the award did not stem from any prejudice on Fuller's part. Finally, he denies having made any statement in a meeting of the 1981 faculty committee indicating prejudgment of the sexual misconduct charges. Dr. Fuller did say that in the late 1960s, one of his female students had complained to him that Dr. Levitt had made what she perceived to be a sexual advance. He stated, however, that he neither believed nor disbelieved her, but thought she might have been mistaken. He advised her to make her complaint to the Dean of Arts and Sciences, and to his knowledge the student never pursued the matter. Dr. Fuller also conceded that he made a statement in a meeting of the faculty committee considering the merit pay raise question to the effect that the University administration might have information concerning the Plaintiff which was not available to the faculty committee and which might justify the lowering of the Plaintiff's merit pay rating.

 The right of a state university faculty member to procedural due process in connection with his termination includes (1) the right to be advised of the cause for his termination in sufficient detail to fairly

---

**2.** These "attachments" consisted of reprints of articles authored by Dr. Harris appearing in various scientific journals.

enable him to show any error that may exist; (2) the right to be advised of the names and the nature of the testimony of the witnesses against him; (3) a meaningful opportunity to be heard in his own defense within a reasonable time; and (4) a hearing before a tribunal that possesses some academic expertise and also possesses an apparent impartiality toward the charges. *Ferguson v. Thomas,* 430 F.2d 852, 856 (5th Cir.1970). Although the Fifth Circuit in *Ferguson v. Thomas* used the expression "apparent impartiality," it is obvious from later decisions that *actual* bias is necessary for the disqualification of a member of an appointed tribunal. *Magill v. Board of Regents of the State of Florida,* 541 F.2d 1073, 1079 (5th Cir.1976); *Jenkins v. Louisiana State Board of Education,* 506 F.2d 992, 1003 (5th Cir.1975); *Duke v. North Texas State University,* 469 F.2d 829, 834 (5th Cir.1972), *cert. denied* 412 U.S. 932, 93 S.Ct. 2760, 37 L.Ed.2d 160 (1973). A plaintiff's claim of prejudice on the part of a member of a university hearing body must be based on more than mere speculation and tenuous inferences. *Duke v. North Texas State University, supra* at 834. The fact that members of the tribunal may be acquainted with the faculty member in question, or may be familiar with the facts of the case, does not disqualify them as decision makers. *Magill v. Board of Regents of the State of Florida, supra; Jenkins v. Louisiana State Board of Education, supra; Duke v. North Texas State University, supra.* See also *Woodbury v. McKinnon,* 447 F.2d 839, 844–5 (5th Cir. 1971). It is important to remember also that the impartiality possessed by the tribunal must be with respect to the specific charges against the accused faculty member, not with respect to some unrelated matter. *Ferguson v. Thomas, supra* at 856.

In the instant case, the Court finds that neither Dr. Harris nor Dr. Fuller possessed any bias or prejudice with respect to the allegations of sexual misconduct brought against the Plaintiff. Dr. Harris had demonstrated his sensitivity to the issue of bias by declining to serve on the merit pay raise committee a year earlier. The fact that he declined to recuse himself from serving on the special hearing tribunal in this case is a strong indication of his impartiality toward the particular charges at issue. He testified in the trial that he reached his verdict as a member of the special hearing tribunal solely on the evidence presented at the hearing. The Court finds his testimony in this regard to be entirely credible.

The Plaintiff's evidence with regard to the alleged bias of Dr. Fuller is equally unconvincing. The Plaintiff did call a witness, Dr. Eleanor Duke, to testify that Dr. Fuller had made a statement at a meeting of the faculty committee concerning the merit pay raise which she interpreted as indicating Dr. Fuller's belief that the Plaintiff was guilty of making sexual advances toward his female students. From her testimony as a whole, however, it was obvious that Dr. Duke could not be sure whether the statement that she remembered had been made by Dr. Fuller or by one Dorothy Corona.[3] Furthermore, James Day, another member of the 1981 committee, testified that he had attended most meetings of the committee, and had no recollection of hearing Dr. Fuller make such a statement. Like Dr. Harris, Dr. Fuller testified that he had no bias with respect to the charges against the Plaintiff, and that as a member of the tribunal he found them to be true because he believed the testimony of the female witnesses. As in the case of Dr. Harris, the Court finds Dr. Fuller's testimony to be credible and accepts it as true.

At the trial of this case, the Plaintiff endeavored to cast doubt upon the impartiality of two other members of the special

---

**3.** It is overwhelmingly probable that Corona, rather than Fuller, made the statement recalled by Dr. Duke. Dorothy Corona is an associate professor of nursing and was the academic adviser to one or more of the female nursing students who brought the charges heard by the special hearing tribunal. In fact, Corona was one of the witnesses at the tribunal's evidentiary hearing.

hearing tribunal, to wit: Dr. Stephen Riter and Dr. James Devine. The Plaintiff's contention in this regard is that these panel members were not impartial because they were serving as departmental chairmen at the time, and therefore were members of the "administration." This is apparently an afterthought on the part of the Plaintiff. At the time the special hearing tribunal met, the Plaintiff made no accusation of bias against either Riter or Devine, and neither was requested to recuse himself. The Plaintiff's complaint in this case likewise makes no allegation of bias. The pretrial order is also silent in this regard. Although the suggestion of bias was made at trial, the Plaintiff himself testified that he knew of no specific basis to claim bias on the part of Riter or Devine.

There is an additional reason why the Plaintiff's claim must fail. The special hearing tribunal consisted of five members, and those five members unanimously recommended termination of the Plaintiff's employment. If the votes of Harris and Fuller were subtracted from the total, three votes in favor of termination would remain. There is no evidence whatsoever, that Harris or Fuller influenced, or attempted to influence, the votes of the other panel members. The vote of a majority of the special hearing tribunal to recommend termination would have supported the action of the Board of Regents in terminating the Plaintiff's employment.

 When a faculty member in an institution of higher education brings a Section 1983 action in connection with the termination of his employment, the Court must first determine whether or not the complainant was accorded due process in the procedures by which he was terminated. In this case, the Court finds that the Plaintiff was afforded due process. The only question remaining is whether the special hearing tribunal and the Board of Regents had before them sufficient evidence to support the conclusion that the Plaintiff's employment should be terminated. *Ferguson v. Thomas, supra* at 859. The Court has reviewed the entire record of the testimony before the special hearing tribunal, and finds it more than sufficient to support the conclusion that the Plaintiff made improper sexual advances toward female students enrolled in his classes on several occasions. The proof more than justified the action of the Board of Regents in terminating his employment.

It is therefore ORDERED that judgment be, and it is hereby, entered in favor of the Defendants, and that the Plaintiff take nothing by this suit.